UPS, in support of its motion for summary education of issues, submitted various documents and evidence where they, in essence, create one and exclusion for shipments where the documents refer to unusual value, wherein they indicate any shipment valued over $50,000 is characterized as an unusual value package. They further go on and there are provisions where they limit their liability to any of those packages where they have been labeled as unusual value. Now these terms appear in the tariff schedule and various other documents that UPS has prepared, and according to the UPS officials, have been and made available online. The one problem with the provisions that UPS has placed limiting their own liability is, by their definition, the term value. Nowhere in any of these documents the term value has ever been defined, whether they represent replacement costs, whether they represent actual value or fair market value. Well the people are asked, the shippers are asked to designate the value, right? Correct. Do they pay an insurance premium? Correct. They pay for that too, yeah. That's correct. That's what you put down as the value. No, the shippers are asked to identify declared value. Yeah. But at no time does a carrier ask specifically is this a retail value or whether it's actual value or replacement cost. But that becomes very important because UPS, in its own tariff schedule and its terms, never pays a fair market value. They only pay the lesser of actual costs or replacement costs or repair costs according to their own records. So are you now contending that in fact the cost as you would calculate it and as you think UPS pursuant to its policy would calculate is less than $50,000? Is that where we're headed with this? What I'm saying is the whole basis of their motion was that this package that was shipped was valued over $50,000 and as a result it falls between the exclusion and therefore we're not liable for the damage or loss. I understand that. And I'm asking you, are you telling us now that in fact the package was worth less than $50,000? What I'm saying, worth in what terms? Whether the cost was less than $50,000? That's what I'm asking you. Obviously it's got to be within the terms of the UPS contract that they give you and are you contending that it's worth less than $50,000 as UPS would define the term under its contract? Correct. And the reason is the only way... But at an earlier stage in this case I think you said the opposite. No. In fact the district court made a reference that the plaintiff, EIJ, has considered the value of the package exceeding $50,000. However, that's not complete. UPS considered the fair market value of the package to be in excess of $50,000. The complaint that was filed in And also EIJ's response to the undisputed facts... When you filed the complaint, how much money were you asking for? At the time there were two packages that were lost. One was for $4,000 something. At the complaint we specifically said damages according to proof at time of trial. There was no identifiable amount listed. But it was specifically in excerpts of record page 8, UPS does say... I'm sorry, the plaintiff has said the fair market value of the package was over $50,000. And also in response to the statement of undisputed facts, the plaintiff in response to whether or not... Let me correct. Let me repeat that. UPS had contended that the packages were valued over $50,000. And in response, EIJ responded by saying, insofar as the fair market value is over $50,000 to concede. Not the replacement cost, not actual cost. In fact, UPS at no time ever inquired during discovery or otherwise from EIJ what the replacement cost of these products are or what the actual cost of these items are. Could you erase this issue in the district court? I'm sorry? Could you erase this issue? It was addressed during the oral argument, Your Honor, not in the briefing. Now, this brings up another interesting point. And the reason is when they use the only-to-term value without defining what value is, it gives UPS the sole discretion of characterizing what value should be. The district court opinion says that the plaintiff seeks to recover $52,935 for that wrong? Well, we never got to that stage. The summary judgment was filed by UPS. And the complaint that was filed in state court never asked in a prayer for relief a specific dollar amount. It was simply saying damages according to proof at time of trial. Yeah, but that's the amount you had on the bill. On what bill? On the claim form? Yeah. Correct. Well, this is the problem. On the claim form, it identifies. There's an instruction by UPS. You have to identify what this number is, whether it's actual cost, replacement cost, or if you look on that claim form, on the top, there is a little language that says identify what this number represents. And there was no reference to that. Can you get me to the page site for the ER for the claim form? Yes, it's 89. I'm sorry? 89. 89, thank you. Yes. Yeah, so this request for claim payment tells the shipper to put down the items that were lost or damaged or what have you and identify what that number represents. And there was no mention of that at all. What do you mean there was no mention? It was not mentioned whether or not that dollar that was printed or handwritten is the replacement cost or a fair amount. But it is the amount of money you were looking for. So the district court was correct when he said that you were asking for that much money. No, because the – no, that's not correct. Because the shipper only purchased insurance for $50,000. Even if the product was – it couldn't have been – it couldn't have asked for more because that's not what they paid for. The insurance they paid for was $50,000. In fact, it brings back another document on ER page 88 where every time a shipper ships packages, it does a printout at the end of the day. And in there, it says how much insurance – what the declared value is and how much insurance you're paying for that declared value. Now, this is interesting because a little over a week ago, UPS filed a citation with the court about a 7th Court of Appeal opinion that was rendered back in January of this year. And in a matter of TRIBER versus UPS. And that brings two very important points. One, the distinction between that case and this case is that in the 7th Circuit case, the shipper had on the record a shipment with actual value of $105,000, but decided to ship it nevertheless, but insuring it for $50,000 because that was the maximum insurance is being offered by UPS. And the package gets lost, and then UPS denies coverage based on that exclusion. Whereas here, there is no record that the actual cost. It was only the fair market value of those watches. The second big distinction was whether or not this exclusion of liability is in connection with the notice of this exclusion of liability. Yes, there is this exclusion buried in this tariff posted online and so forth and so on, but there is no actual substantive notice. Now, in TRIBER and STROP, what was interesting is when the shipper went to ship the — Sotomayor, notice of what? I'm sorry. The notice of the exclusion of the liability. Because in TRIBER, when the person went to ship — You dropped that issue. I thought you had argued that in the district court, but you're not arguing it now. Do you agree? I only brought it up because of the citation that was just recently submitted. You're not arguing it. You're not arguing it. Correct. Now, this term value, as is identified by UPS in the moving papers, is vague and ambiguous. And it just only allows the UPS the discretion to decide what value to use, whether or not to exclude a package or include a package, which creates the vague and ambiguity argument. And because they're the drafters of the agreement, it should be construed against them, not the shipper. And what also further makes this matter worse is after the UPS denies liability, claiming that this was an unusually high-value item, they nevertheless kept the premium. At no time did they ever return — Your Honor, we are now saying they'll give it back to you once the case is resolved. Sorry. That seems like a non-issue. Well, it was only because we're in court of appeal. I mean, you don't keep the premium for your own benefit until somebody sues you. You're supposed to, at least at the very best, return the money. You don't keep it until somebody sues you. Have they not even attempted to — have they not even tendered the premium? Not as of today. They've only offered to tender it in their briefs. How large is the premium? It's not much. It's $170. It's not the dollar amount. But it's really the principle, because you're keeping the benefit of the insurance premium that you're saying doesn't apply, but you never say you keep it. Well, we're willing to pay it, which is what they argued in their brief, and this side to this Court's ruling in some case that says shippers are entitled to withhold money until they're ordered to return it, which is not what the rule was. I noticed that the terms of the shipping policy of the contract says defining excess value, any package having a value of more than $50,000. That's the definition of value. Correct. And on the claim form, it asks you to specify, specify dollar amount and indicate whether actual replacement or repair — it doesn't say value, it says cost. I wish they'd be consistent with what the vocabulary was. Here's that changing form. But you don't specify. Why not? Well, I think the clerks — It's usually dollar amount, but you don't choose. You don't say this is actual. You don't say this is replacement. You don't say this is a fair amount. You just give some numbers. Correct. And, you know, I don't want to speak on behalf of what the shippers does. All I can say is, you know, the clerks are, you know, packages are lost. They fill out claim forms, and they submit them to UPS, because this is an ongoing business that ships numerous packages every day. And I don't want to speak on behalf of the shipper, and I don't want to talk about facts that are not on record. But I'm presuming it's a retail operation. They were just told, oh, you just write down what the value is. This just really seems to be a manufactured issue, in the sense that you filled out a form, you gave a value. You filled out — you wrote a complaint, you gave a value. There was never any dispute anywhere in this case, as I understand it, about what the value was. And then all of a sudden, in the oral argument, you start musing about, well, what is this value? And now you've made it a principal part of your appeal. But there's really never been a dispute that whatever value means it was more than $50,000 in this case. Has there ever been a dispute? We don't know that. It was never inquired. In fact, the plaintiff has always — You filed a complaint in which you stated a value. Correct. Why did you state it if it wasn't a relevant value? It must have been a value that you thought was relevant. You also stated one on your claim form. Well, because at the time of the complaint, I drafted the complaint. Right. The complaint was drafted because that was the sales price to the purchaser. In all honesty, that's really what it was. When the retailer sold the watch — So you basically bought into a — throughout this dispute an amount of money as being the value. Now you're sort of backing off that. No, because — no, no, not really. Because at all times, I always claimed the value I used is a fair market value. I never claimed in any of the documents whether that was an actual or repair — replacement. And the difference — the importance of that is UPS. Had it not been this unusual — If you got the $52,000, then you could go out and replace the watches for $25,000 and then deliver them to the buyer. So you make double profit. Well, unfortunately, I mean, watch business isn't as lucrative like that. The markups aren't, like, 100 percent. But the question is, why did you lose? The answer is $52,000. And that's presumably why you put it down. I mean, why you hired them. Correct. That was the sale price that was lost. Correct. However, you have to — one thing that is really important, had it not been this unusual value package issue, UPS never pays a fair market value. All right. Can I ask another question? Is there anything else in this case? That is, you make a preemption argument. Yes. Does that matter? Let's suppose we disagreed with you about this issue. Is there still a preemption issue in the case? No, Your Honor. No. The preemption issue only comes up if we agreed with you about it. And then there would be issues as to whether or not there was a bad faith cause of action or what else. That's it. Just a bad faith cause of action. Correct. And then we get into all this crazy stuff about the Carmack Amendment and the ADA and so on. Correct. But really, the gist of it is the issue of what the value represents. And I think that's the issue of question of fact. We understand the argument. Why don't you say the whole time we're here with UPS? Absolutely. Absolutely. Good morning, Your Honors. May it please the Court, Ruth Borenstein on behalf of UPS. Well, you know, if they paid the premium of $50,000, and let's say they claim $52,000, then why aren't they entitled to the $50,000? That's what they paid the premium for. The contract, the tariff, and other items, the terms and conditions, the excess value insurance brochure, make clear that there's a limit of a value of $50,000 for what you can ship. And this is actually common in the industry. In the King Jewelry case, although that wasn't a focus of it, there's a reference to the fact that FedEx has a similar. They only allow you to declare and ship up to $50,000. And that's because of issues such as the risk of theft and skewing, ultimately, the premiums that they're going to have to collect. Now, that skewing argument doesn't make any sense to me at all. I understand the risk of theft argument. But skewing, I mean, just charge what the premiums are, and you're done with it. I understand Judge Wood wrote skewing, but I think she screwed it up. I'll go with the risk of theft, which is a concern. And so as Judge Wood said in Tribor and Straub, if you're going to have some kind of exclusion, you have to then, as a practical matter, prohibit recovery because otherwise everybody can do an end around, or they're going to ship. Why don't you define value, actually, in your policy? I mean, it's a fair point, fair market value, replacement value. Why don't you define that? The term A value is a broad one, and I think it comes in in cases where sometimes in the jewelry world, I think if any of us listen to TV commercials, you always hear them talking about it's guaranteed to appraise for double or triple the price. So there's a lot of leeway about it. As a practical matter, in the claims process, when someone submits a claim, and here it's a problematic claim because in the claim form, they're saying we're asking you for more than $52,000. So they're saying we're assigning a value over $50,000. But as a practical matter in the claims process, someone files a claim, and then they're supposed to back it up with proof of value. And there's back and forth and give and take. One thing I need to take issue with is counsel said that UPS never inquired about what this value means. Now, there's not evidence in the record that was submitted to the court about value apart from the claim form. So the only evidence in there is the claim form itself, which said $52,900. And the reasons I think this court has rules about not raising arguments for the first time on appeal is that it is prejudicial when you don't have a factual issue developed. And everybody did litigate this case below on the issue of was there notice of the exclusion, was the exclusion waived. We weren't arguing until a comment made at oral argument. We weren't talking about the value. Had at any point Mr. Eskegian and his declaration that he gave, which went all about notice and waiver, if he said anything to the effect of I filled out that claim form that asked me to put an actual or replacement value, but really I put in too much, I misunderstood, even though I've been a shipper for 16 years and had numerous claims, suddenly I'm now using fair macro value, the parties could have addressed that below. Do we know whether his prior numerous claims ever included anything over what exclusion amount, which probably has not been $50,000 over the years, probably gone up a little bit as time's gone on. Do we know whether he's ever had any claim for over the exclusion amount? I don't believe so, but I'm not sure. So you're saying, well, he's done this before, well, he hasn't done this before. That's correct. I'm not sure whether it's relevant given the history in the district court, but just let me ask you. If someone comes to you and says, listen, I want, I'm making a claim for jewelry, the retail sale price that my customer was paying was $52,000. Would you respond, well, okay, fine, I'll pay you the replacement cost, or would you pay the $52,000? They would not, the maximum you can declare is $50,000, so they're never going to get the $52,000. Let me ask it differently so I'm not distracting you by that. Let's say that somebody says the retail price my customer was willing to pay me was $49,000, and I'm making a claim for $49,000. Would you pay the $49,000, or would you say, well, no, I want to pay you what your actual cost was? It would be the actual cost or the replacement cost. And are you arguing that value does not mean what you're going to pay, but value means the fair market value that somebody else is going to pay, not you? You know, it's, in the end, I know as a practical matter, they will be paid the actual or replacement cost. So if in this case, instead of submitting, even if they had submitted a claim for $52,900 and then came back and said, you know, I made a mistake, that was the fair market value, here's an invoice from Rolex, and it's a different, lower number, they would have been paid that lower number. Now, there's deposition testimony that says that that lower number doesn't exist. Well, it has to be. There has to be. I mean, if they're selling the customer. A lower number under $50,000 doesn't exist. If they're selling watches at retail for $52,000, roughly, I'd be astounded if that's exactly the price they paid for them. I'd also be a little astounded if the price they paid for them was not at least a penny under $50,000. Well. I mean, if they're operating on a margin like that, it's a magical business. You're probably right. But I'm not sure it's relevant given where we now are with this case. There's also you may have noticed there's two different figures in the complaint. At one point in paragraph 14, and Judge Berzon, you had asked about what amount did they ask for. And in paragraph 14, which is page 6 of the excerpts, they said plaintiff has suffered damage in the amount of $52,935. So that's what they assigned to it. But there's a different place in the complaint where they had a number for $51,000 and change. And I'm somewhat hesitant. I know I'm not supposed to go outside the record, but there was deposition testimony about that being the actual cost, the replacement cost. In any event, we don't know. Fair market value can mean fair market value in wholesale, I suppose. True. True. Well, I mean, is the bill that goes out with the package, does that show the value on it? What happens is this is a shipper that uses an electronic, what they call a manifesting system, where the shipper enters in all of the information, including what the declared value is. And in this case, it was $50,000. So the people that handle the package for UPS, do they know what the package is insured for? My understanding is that all of the information about the shipment gets encoded into that little thing that looks like a target if you ever get a package. I don't really know how to describe it. But it's an image, and they scan that. And I do believe that various people along the way through access of that scanning do know the declared value of the package. But I think there's all sorts of security things in place that not everybody does. Yeah, well, so how does that increase the temptation to steal, then? Unless it's stamped on the package, this package is insured for $50,000 or $52,000. Well, I think it's conceivable that for the people who do have access to the information and scan it, I like to think that all UPS employees, and I can vouch for the overwhelming majority, are very honest. But there are issues occasionally of identifying packages. It's a concern more generic. That is, if it's known that we're shipping things that are more than $50,000, in general, is it going to be worth that? I mean, people are going to think, well, this could be worth a million dollars, so I better go steal it. Right. And, you know, in the end, UPS is a small package carrier. It's not engaged in – That's true. Well, I mean, small packages as opposed to large freight. They move a lot of merchandise. People can look at – you know, there are other services that do things like transport jewelry. There are armed guards. There's whole sorts of packages for the unusual value. And UPS and FedEx and Emory and all these other companies have decided to limit what they do and get out of that. Do we have to worry about any of this CARMEC amendment ADA stuff in this case? Your Honor, if you – if you agree with me that the limitation of liability is enforceable and there's no dispute about the value because of the only evidence being the claim form, then you would not have to deal with that at all. Presumably, there's a jurisdictional problem, which is under the ADA. What's the jurisdiction? Actually – You say diversity, but that can't be right because there's no $75,000. It's – the jurisdiction comes from federal common law that governs a carrier's contract for cargo carriage. And in particular, the limitation of liability, Judge Fletcher is well-known from the ReadWrite case, which we relied on. Under the ADA for that reason. And so the cargo carriage equivalent, which is the Federal Aviation Administration Act, the FAAA, for better or for worse, does not provide complete preemption, so it's not jurisdictional. And I suppose if you – if you thought that somehow federal common law did not apply at all and – Your position is that federal common law applies to the enforceability as a limitation of liability? Yes, Your Honor. As complete preemption? As field preemption. I'm talking to one of the leading experts on this, Judge Fletcher, from the ReadWrite case, which relied very heavily on the Sam Majors case from the Fifth Circuit and the King Jewelry case from this court, all talk about the contract of carriage for air cargo being governed by federal common law because of the need for uniformity, largely. I hate to do this, but it may well be a question of federal common law, that is to say it's a limitation of liability. But does it arise as a defense? What was the last part? Does it arise as a defense? In other words, is it available as a basis for removal? Yes, Your Honor. I'm trying to think of cases I can cite to you off the top of my head. That is to say, the ordinary rule, of course, is that if it's part of – part of the well-pleaded complaint and it's federal common law, of course, there's federal question jurisdiction. The ordinary rule, however, if it arises as a defense, that's not a basis for federal question jurisdiction unless you are in the sort of the so-called artful pleading or complete preemption field. And there's not been complete preemption across the board because we know, for example, an ordinary contract claim is not preempted. Right. So, I mean, I really – I'm quite reluctant to say these things. No. And, Your Honor, if you're really interested, I can – I have authorities on this. I think that – Judge Wood seems to think that it's federal question jurisdiction. And I – And I cite Readwright for that proposition. And I don't recall if Readwright was a removal case. I think that the Kessel case from this Court was, but let me – let me just quickly It was just kind of confusing because people were just asserting diversity jurisdiction, and that seems wrong. So it has to be something else. I'm looking at page 21 of the excerpt, which – I'm just trying to – there's two pages from the removal petition that talk about federal common law governing and providing jurisdiction. And I apologize that I can't tell you off the top of my head which of these cases are removal cases, but I promise you that – No, they may be wrong. But this may – I mean, we clearly have a request in sort of the ordinary abdominum clause for slightly in excess of $50,000. And he's also asking punitives, which would very possibly take it above. I'm not sure why we're necessarily under the jurisdictional amount of diversity. Judge Berzon indicated that she thought maybe this was under jurisdictional amount, but I'm not sure that that's so because the test is to a legal certainty under the jurisdictional amount. I'm not sure it's to a legal certainty depending on the availability of punitives. I know we had it in our removal petition, and I know that EIJ, in their brief, in the statement of jurisdiction, agreed with diversity, but – There's no doubt that the package was – no doubt that the package was stolen? There's no doubt that the package did not arrive. It did not arrive. All right. And there's no doubt they paid the premium for $50,000, right? Yes. And there's no doubt that when people make an insurance claim, what UPS pays is a replacement fee, right? Correct. Yes. Well, what it costs them, the replacement value. So I don't understand. When they designate that amount on the bill or whatever you call it, and they pay the premium, are they told if you're a shipper of – that you're only insured up to the wholesale value of what you paid for it? They're told in several places that if it has a value over $50,000 – Where are they told it? Are they searching through a bunch of other papers and documents? Well, it's in – Is it right on the form they fill out? Well, the form that they fill out every day, the manifest, doesn't have that. But in order to get the software that they load onto their system that allows them to print the manifest, it requires them to agree to the terms and conditions. They get a copy of the rate and service guide, which has the terms and conditions. And they got every year a two-page brochure describing the excess value program, which also includes the limit. And as this Court explained in the Dero case, a shipper doesn't have to have actual notice, particularly when the circumstances such as the shipper's experience, length of time, and incentive in knowing what the terms and conditions are when they're shipping something of great value. Also, in this particular case, it's very unusual in terms of the notice issue. EIJ had sued UPS in the past on a claim. And in the course of that claim, Mr. Eskejian was deposed and was actually given his copy of the tariff at his deposition. So there's no doubt that he's had a copy of the tariff. He said in his deposition he gets the rate and service guide. He doesn't necessarily look at it. Who does? Well, any high-value shipper, anyone who is routinely using UPS's services and is declaring a value and submitting forms, has all the incentive in the world to know exactly what the procedures are and what's available. And in the excess value brochure, which is only two pages, it says plainly that you're not going to recover if you ship something with value over $50,000. But if you're charging the premium and it's paid, and then you only pay on whatever it is, replacement value or wholesale value, what difference does all that make? And the people that are holding this package, only a few of them would have any idea what the value is. They'd have their higher-level employees who would have to be dishonest to get in there and look for it and then steal it. Well, packages also generally are shipped, and you can see on the shipping label who the shipper is and who the recipient is. And sometimes if it's going to be going from some place that has a name that it's a jewelry store, it's going to be some indication that it might be something of value. It could be $500. It could be, but I think Judge Berzon made the point for me earlier that it could skew things in that if people understand that even though there's a $50,000 limit, people actually routinely could be shipping things of much higher value, that that can increase the risk of theft. Well, how would the thief know it had a higher value? Well, they wouldn't necessarily know about a specific package, but they could tell that it's between a jewelry store. If they've got a scanner, they can know the declared value. And I can say it's common in this industry. FedEx does the same thing. As I mentioned, it's stated in the King Jewelry case. In I think the commodity recovery case, it talks about Emory, and they've got a limit of $25,000 unless you make special arrangements. And so the industry as a whole has determined that it's in their interest and in the interest of limiting theft and protecting their employees who are not armed personnel from carrying super high-value things to have these kinds of restrictions. Again, I'm not sure this is in the case, but I'm just trying to get this clear. Your argument, it seems to me, is that value for purposes of your exclusion and limitation of liability is defined as fair market value, but value in terms of what you're willing to pay is defined as something else that's lower. Is that right? I think — Is that right? I'm actually not positive. I think that's a yes or no question. And maybe won't work. It's a little harder for me to say because it wasn't precisely the issue presented in this case. That I understand, which is why I prefaced this. I'm not sure it's relevant given the posture the case is now in. But it is my belief that this only comes up when someone submits proof of a claim or submits a claim as proof, something that has actual value. Let me ask the question in a different way. Somebody ships jewelry worth $49,000, worth in the sense of that's the retail price the customer to whom it is shipped has agreed to pay. And they make a claim to you for $49,000. Do you pay $49,000? No, Your Honor. That's what I thought. Okay. That was my question. So value for purposes of — I understand your further answer is, and you don't know whether it is your client's position, that the value that triggers the $50,000 limit is the fair market value or something else. You know what the insurance answer is, but you don't know what the other answer is. Correct. That means nobody else knows either, which is sort of difficult. But I believe — I just can't say with certainty. I believe that in the end, if someone said I've shipped something with a fair market value of $60,000 and I'm submitting a claim for $40,000 because that's the actual cost and here's my invoice that proves it, I believe that claim would be paid. I don't think that the company would turn around and say, ah, but the retail value — What you're really saying, in essence, is that the company here may have something, they just didn't raise it in time. Because that's really what you're saying. You're saying since they did specify fair market value in the complaint, it could be that if they had litigated this in the district court on this question, you might have said, oh, yes, we'll pay you. Yes, although I can tell you that there was deposition testimony that would make — And you're saying it's not fair because you didn't get to prove it. And I don't think that they would be in a position to make that argument or support that argument with evidence. And these insurance premiums are — I mean, is UPS self-insured? At the time this was in place, there was a UPS entity called Glenlake and then Capital, UPS Capital, that was the insurance company for this. They were named as a defendant, although they haven't been mentioned in the appeal. Well, when they figure out the premiums, if UPS is paying for this to itself with some other company, are those premiums based on the figure that's placed on the — the value figure that's placed on the package by the shipper? Yes, Your Honor. So you end up making money. If you're not — I mean, if you — if your premiums are set, say, on $50,000, take this case, if the premium is set at $50,000, you're paid for whatever it was, $138. And you know it's a jeweler, and you know he's shipping it, and you know he's totally going to get the wholesale value, and you're making extra money on the premiums. Well, the shipper assigns — the shipper decides how much value to declare, and an efficient shipper would declare the actual value, the amount that they could recover on a claim, their own value. Well, actual value is itself ambiguous. Does actual value mean value at retail or at wholesale? I mean, actual value doesn't tell me which of those two you mean. You know, this household, so this whole case is a pleading — based on a pleading mistake. And you should have known going in, or you would have known very quickly going in, that this $51,000 or $52,000, the number moves around a little bit, was fair market value as paid by the ultimate customer. I mean, this just — and we're here after God knows how many hours of attorney's fees, arguing over what should have been — I'm making the number up because I don't know what the margin is — a $40,000 claim, $35,000 claim. Your Honor, there was dialogue in the claims process to have the shipper prove up the value. And I'm a little hesitant because I'm going outside the record, but the shipper was asked — We don't tell anyone. The shipper was asked, is this $52,000? Is this your cost? Did you pay this? Is this the replacement cost? And the shipper said yes. Oh, okay. So — Well, the shipper got greedy in the price. Okay, got it. Before I sit down, I'm mindful, if the court would find it useful on the jurisdiction issue to get authorities on removal under federal common law, I'd be happy to submit them. I apologize for not being able to do it off the top of my head, but — You're doing fine. I think I know the one. Thank you. We'll give you an A on the record. You can buy the disk. I will. Thank you very much. Very, very briefly, just — Did you read all that stuff that they sent out to your client? No. Well, after the litigation, yes. Did your client read it? No, because they're so voluminous. And you've got to dig through these pages and pages and pages. And all it is is exclusions of — There's only two pages. No, no, no, no, no. In fact, on the exclusions of records, this portion of the tariff, I don't know how many pages it is. It starts from page 66 through 86. So when they tried to settle with him for what he paid for it, he turned that down, huh? I'm sorry, say that again? Well, did they say, we'll settle with you for what you paid for this? No, it never got that. It never happened. In fact, there was a comment earlier about EIJ being handed over a copy of this tariff in another pending litigation prior to this case. Well, that case where the P.S. didn't pay for that shipment had nothing to do with the issues in this case. The tariff portion that was discussed in the deposition in the other case had something completely irrelevant. Now, this is outside the records. I won't tell what your answer is either. I won't tell either. Did your client insist that what he paid for it was over $50,000? No. Never? No, not to my recollection. Well, that's different from never. Because it's been quite some time, and I don't want to — My client, first of all, is Armenian. His English is not 100 percent, number one. But he has been in this business quite some time. He's been in the watch business for many, many years. And you don't sell watches of that value with no profit margin, obviously. If it's a $52,000 sale, you're obviously not buying at $52,000. Right. The number you produce is the fair market value replacement cost at no time. It wasn't until after this lawsuit was filed. They just simply denied the claim the moment that claim form was submitted. That was it. It's sort of amazing that a $50,000 case has gotten this far. I know. I know. And we still don't know what the term value is. That's the problem. That's why I wear a $25 Casio. I've got a Timex, and it cost me $29. They'll work better. We don't have a watch at all. Thank you. Better deal. Thank you. All right. Thank you. My Timex lights up. Mine does, too. Mine is an alarm. All right. Criticom versus Scottsdale Insurance.
judges: Pregerson, W. Fletcher, Berzon